IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GORDIAN MEDICAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:24-cv-01021 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ACCURATE HEALTHCARE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Pending before the Court is a motion to dismiss for failure to state a claim (Doc. No. 14, "Motion") and supporting memorandum of law (Doc. No. 15) filed by Defendant, Accurate Healthcare Inc. ("Defendant" or, in some quotations, "Accurate"). Plaintiff, Gordian Medical Inc. ("Plaintiff" or, in some quotations, "Gordian"), has filed a response (Doc. No. 18, "Response"). Defendant has filed a reply (Doc. No. 19, "Reply").

For the reasons discussed herein, the Motion will be **denied**.

**ALLEGED FACTS**[1]

Plaintiff brings this action to recover damages resulting from an alleged breach of contract by Defendant. (Doc. No. 1, "Complaint"). In May 2024, Plaintiff ceased general business operations and began, via a third-party, the wind-down, dissolution, and permanent cessation of

---

[1] The facts contained herein come from Plaintiff's complaint (Doc. No. 1, "Complaint"). For purposes of the instant Motion and pursuant to the typical mechanisms of assessing motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts in the Complaint as true, except to the extent that this Order qualifies them (as, for example, by "Plaintiffs allege") to denote that they are not being taken as true (because, for example, they are not really facts at all but rather legal conclusions) but rather are set forth to indicate what Plaintiffs *claim* to be true. Throughout this Order, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even with the awareness that any such alleged fact may ultimately prove false.

its business operations. (*Id*. at ¶ 8). On or about April 18, 2024, Plaintiff and Defendant executed a term sheet (Doc. No. 1-2, "Term Sheet"), which among other things, set forth provisions relating to the transfer to Defendant of certain employees and customer relationships of Plaintiff, as well as Defendant's acquisition of certain assets of Plaintiff. (Doc. No. 1 at ¶ 10; Doc. No. 1-2 at 1).

Specifically, Section 5 of the Term Sheet[2] provided that Defendant would (i) purchase all remaining inventory at Plaintiff's Frankfort, Kentucky warehouse ("Inventory") (*id*. at ¶ 11), (ii) would do so within ten (10) days of the expiration of the "Transition Period" (*id*. at ¶ 11), which expired on May 29, 2024 (*id*. at ¶ 12); ten days from the expiration was June 8, 2024. (*Id*. at ¶ 13). Also, this contemplated transaction was limited in nature, as "[n]o other assets, tangible or intangible, other than those specifically set forth above [were to be] be transferred to [Defendant]." (Doc. No. 1-2 at 3).

The introductory paragraph of the Term Sheet—the interpretation of which is central to the dispute between the parties in this action—provides:

> This Term Sheet ("**Term Sheet**") is intended to outline the framework under which Gordian Medical, Inc. ("**Gordian**") will coordinate the transfer of certain employee and customer relationships to Accurate Medical, Inc. ("**Accurate**") to facilitate a smooth transition of customer service and patient care during Gordian's exit from the skilled nursing wound care supply business (the "**Transition**"). The Term Sheet is intended to confirm the mutual expectations of Accurate and Gordian as the parties work to complete the Transition. The parties acknowledge that the Transition Activities that follow are to be conducted on a commercially reasonable and good-faith basis. This Term Sheet is non-binding except in respect of Sections 3, 4 and 5 of the Terms and Conditions set forth below.

(Doc. No. 1-2 at 1) (emphasis in original). Plaintiff alleges that Section (5)—specifically, the Section (5) appearing below the heading "Transition Activities" of the Term Sheet—provides:

---

[2] In an observation that is relevant for the reasons discussed below, the Court notes that the "Section (5)" referred to here as Section (5) under the "Transition Activities" portion of the Term Sheet, and not Section (5) under the "Other Terms and Conditions part of the Term Sheet. (Doc. No. 1-1 at 2)

> **Inventory Purchase.** Within 10 days of the end of the Transition Period, [Plaintiff] will sell all remaining inventory at [Plaintiff's] Frankfort, Kentucky warehouse to [Defendant] (the "**Inventory**"). The purchase price for the Inventory will be [Plaintiff's] actual cost for the Inventory (supplier invoice price plus freight charges incurred) (the "**Purchase Price**"). [Defendant] will be responsible for the costs of loading and transporting the Inventory from [Plaintiff's] warehouse. The sale of the Inventory will be documented by a bill of sale and all amounts shall be paid on or before the date of physical transfer of the Inventory. [Plaintiff] shall provide [Defendant] with invoices or other evidence reasonably requested by [Defendant] to allow [Defendant] to verify [Plaintiff's] costs with respect to the Inventory. By the date of the Inventory Purchase, [Plaintiff] will have provided [Defendant] its vendor information, including pricing to the extent permitted under existing confidentiality obligations of [Plaintiff].[3]

(*Id*. at ¶ 11). But the same section within Exhibit A (Doc. No. 1-2) that Plaintiff attached to the Complaint as the Term Sheet, reads somewhat differently. Specifically, Exhibit A reflects the same language Plaintiff used in the Complaint in purportedly quoting this section, *except that it includes a sentence that is omitted from the quotation of that section in the Complaint*:

> **Inventory Purchase.** Within 10 days of the end of the Transition Period, [Plaintiff] will sell all remaining inventory at [Plaintiff's] Frankfort, Kentucky warehouse to [Defendant] (the "**Inventory**"). The purchase price for the Inventory will be [Plaintiff's] actual cost for the Inventory (supplier invoice price plus freight charges incurred) (the "**Purchase Price**"). [Defendant] will be responsible for the costs of loading and transporting the Inventory from [Plaintiff's] warehouse. The sale of the Inventory will be documented by a bill of sale and all amounts shall be paid on or before the date of physical transfer of the Inventory. **The parties shall jointly conduct a review of the Inventory to verify the physical condition, value and quantity of the Inventory.** [Plaintiff] shall provide [Defendant] with invoices or other evidence reasonably requested by [Defendant] to allow [Defendant] to verify [Plaintiff's] costs with respect to the Inventory. By the date of the Inventory Purchase, [Plaintiff] will have provided [Defendant] its vendor information, including pricing to the extent permitted under existing confidentiality obligations of [Plaintiff].

---

[3] This is also how this same paragraph appears in the demand letter sent from Plaintiff's wind-down officer to Defendant's president, Mr. Hobbs, on June 10, 2024. (*See* Doc. No. 1-4 at 2). As to why Plaintiff (through its agents and attorneys) twice omitted the same sentence, the Court cannot say. But it can say that this is not a good look for Plaintiff and that it could redound negatively on Plaintiff at some point in this litigation..

(*Id.*) (emphasis added). Unsurprisingly, the Court accepts as accurate the version of the Term Sheet attached by Plaintiff as Exhibit A to the Complaint (Doc. No. 1-2)—including the additional sentence emphasized above that Plaintiff omitted in the Complaint's quotation of Section 5.

Notably, the Section 5 quoted above is found within the Term Sheet under the heading, "Transition Activities," rather than under the heading, "Other Terms and Conditions," which also has a section 5. (*Compare* Doc. No. 1-2 at 2 *with* Doc. No. 1-2 at 3). And though the introductory paragraph of the Term Sheet states that "Section . . . [5]" is binding even though most of the Term Sheet is nonbinding, (Doc. No. 1-2 at 1), the parties dispute *which* Section 5 is binding. (Doc. No. 1-2 at 1).

The Term Sheet was signed by Defendant's president, James Hobbs ("Mr. Hobbs"), on April 18, 2024. (*Id.* at ¶ 17). Plaintiff alleges that after the execution of the Term Sheet, Defendant agreed to purchase the Inventory for the total aggregate purchase price of $1,547,118.49 (the "Inventory Purchase Price"). (*Id.* at ¶ 18). After signing the Term Sheet, Defendant approached Plaintiff's wind-down officer and expressed interest in obtaining certain Protected Health Information ("PHI") of Plaintiff's customers. (*Id.* at ¶ 19). The PHI is not an asset included in the Term Sheet; however, Plaintiff's wind-down officer informed Defendant that he would inquire as to whether he could legally transfer the PHI to Defendant. (*Id.* at ¶¶ 20-21).

On June 7, 2024, one (1) day before Defendant was (according to Plaintiff) required to purchase the Inventory as agreed under the Term Sheet, Mr. Hobbs (on behalf of Defendant) informed Plaintiff's wind-down officer that Defendant was "not taking the [I]nventory," based on Defendant's incorrect assertion that the wind-down officer would "not give [Defendant] the [PHI] timely . . . ." (*Id.* at ¶ 22; Doc. No. 1-3). The wind-down officer responded to Mr. Hobbs that same day, stating, "to correct the record, I have not refused to provide patient information, rather my

legal counsel is reviewing what information can be legally provided, as there are rules governing the safeguarding of" PHI."[4] (*Id*. at ¶¶ 23-24; Doc. No. 1-3 at 2).

On June 10, 2024, two (2) days following expiration of the Transition Period, Plaintiff's wind-down officer sent to Defendant a written demand letter, demanding therein that Defendant purchase the Inventory as (according to Plaintiff) agreed to under what Plaintiff alleges is the clear and plain language of the Term Sheet. (*Id*. at ¶ 29; Doc. No. 1-4). After transmittal to Defendant of the demand letter, Defendant continued to refuse to purchase the Inventory as allegedly agreed to under the Term Sheet. (Doc. No. 1 at ¶ 30). Plaintiff alleges that Defendant remains obligated to purchase the Inventory but—according to Plaintiff—is attempting to shirk such obligation based on a purely fictional "counter-obligation" to transfer Plaintiff's PHI—a term that does not exist in the Term Sheet. (*Id*. at ¶ 27).

Based on these factual allegations, the Complaint asserts a single cause of action (breach of contract), wherein Plaintiff alleges that Defendant willfully breached its obligations under the Term Sheet by failing to purchase the Inventory for the Purchase Price by the June 8, 2024 deadline. (*Id*. at ¶ 29). The Complaint prays for, primarily and among other things, damages in the alleged agreed purchase price on for Inventory ($1,547,118.49), (*Id.* at 7-8).

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[4] Although the Complaint does not so state, the Court notes that rules "governing the safeguarding of PHI" are prescribed by the Health Insurance Portability and Accountability Act (HIPAA).

liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity

to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Herpst v. Parkridge Med. Ctr., Inc.*, No. E201700419COAR3CV, 2018 WL 4052208, at *3 (Tenn. Ct. App. Aug. 23, 2018); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## DISCUSSION

As in many other contractual disputes, here Defendant and Plaintiff dispute the meaning and enforceability of the alleged contract, i.e., the Term Sheet. These disputes are crucial here because, for the Complaint to survive the Motion, Plaintiff must have plausibly alleged that: (i) the Term Sheet is an enforceable contract (even though the Term Sheet identifies only *some* particular provisions therein as being enforceable (i.e., "binding"), including "Section[ ] . . . 5");[5] and (ii) the Section 5 that is among the (few) parts of the Term Sheet that are enforceable includes the Section 5 that is found *under "Transition Activities" in particular.*

As is relevant to the first issue, the parties also dispute whether the Term Sheet is (if a contract at all)[6] a contract *for the sale of goods* in particular, such that (Kentucky's version of)[7] the Uniform Commercial Code ("UCC") applies. This question is material to the first issue because if the UCC applies, it has provisions that bear on the extent to which the contract is enforceable. Plaintiff argues that the Term Sheet is a contract for the sale of goods, and Defendant argues that the Term Sheet is not. The Court will determine whether the Term Sheet is a contract for the sale of goods, before reviewing its terms and enforceability.

---

[5] If the Term Sheet is indeed an enforceable contract, then it stands to reason that the particular terms therein are enforceable to the extent that the Term Sheet indicates that they are (even though it indicates that other terms are not enforceable). This means, among other things, that if the Term Sheet is an enforceable contract, then the Section 5 that is specifically identified as being enforceable (whichever Section 5 that is) is indeed enforceable.

[6] Before whether asking whether the Term Sheet is enforceable, the Court must first address whether, if it *is* enforceable, it is a contract specifically for the sale of goods. This is because the answer to that question determines whether the UCC applies—and if the UCC applies, part of what applies are its provisions that inform the Court whether there is in fact an enforceable contract. In other words, to determine whether the Term Sheet is an enforceable contract, the Court first must ask *what kind of contract* (i.e., one for the sale of goods or not one for the sale of goods) it is if indeed it is enforceable.

[7] The parties agree that Kentucky law governs this contract dispute (Doc. Nos. 18 at n.3; 19 at n.3),

As Defendant notes, Kentucky courts assessing the true nature of a contract "will ignore apparently inconsistent language used and look to the real nature of the agreement between the parties, what its real purpose was, and what, from the nature of the transaction, must have been in the minds of the parties." (Doc. No. 15 at 8) (quoting *Buttorff v. United Elec. Labs, Inc.*, 459 S.W.2d 581, 585 (Ky. Ct. App. 1970)). In viewing the factual allegations in favor of Plaintiff, and given Defendant's lack of argument to the contrary, the Court finds it plausible that the Term Sheet was intended to formalize an arrangement between Plaintiff and Defendant to purchase Plaintiff's business operations, including "certain employee and customer relationships" and "all remaining inventory at [Plaintiff's] Frankfort, Kentucky warehouse" (the "Inventory"). (Doc. No. 1-2 at 1-2).

Pursuant to the Kentucky Revised Statute Annotated ("K.R.S.") § 355.2-105, "goods" means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." Ky. Rev. Stat. Ann. § 355.2-105. Here, Inventory appears to be something "moveable at the time of identification to the contract" – "the purchase price for the Inventory will be [Plaintiff's] actual cost for the Inventory…. [Defendant] will be responsible for the costs of loading and transporting the Inventory from [Plaintiff's] warehouse." (Doc. No. 1-2 at 2). True, the Term Sheet does contemplate that the sale of things other than "goods"; however, the UCC nevertheless applies if the sale-of-goods aspect of the Term Sheet "predominate,"[8] which the Court finds to be the case here when construing the Complaint

---

[8] Under Kentucky's version of the UCC:

> (1) Unless the context otherwise requires, and except as provided in subsection (3) of this section, this article applies to transactions in goods and, in the case of a hybrid transaction, it applies to the extent provided in subsection (2) of this section.

in favor of Plaintiff as required at this early stage. Thus, the Court finds that the Term Sheet is (if a contract at all) a contract for the sale of goods and is governed by the UCC.

Having determined that the Term Sheet is (if a contract at all) a contract for the sale of goods and is governed by the UCC, the Court will next determine its enforceability and the meaning of its terms.

    I.    <u>Applicable contract principles</u>

"Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible." *City of Louisa v. Newland,* Ky., 705 S.W.2d 916, 919 (1986). Where a valid contract exists, its interpretation is a question of law to be decided by the court. *3D Enterprises Contracting Corp. v. Louisville and Jefferson Cnty. Metropolitan Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). If a contract is unambiguous, the literal meaning of the contract controls the outcome of the dispute. *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965); *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). "[A]n otherwise unambiguous contract does not become ambiguous when [i.e., merely because] a party asserts . . . that the terms of the agreement fail to state what it intended." *Ahmed v. Louisville & Jefferson Cnty. Metro. Sewer*

---

(2) In a hybrid transaction:
    (a) If the sale-of-goods aspects do not predominate, only the provisions of this article which relate primarily to the sale-of-goods aspects of the transaction apply, and the provisions that relate primarily to the transaction as a whole do not apply; and
    (b) If the sale-of-goods aspects predominate, this article applies to the transaction but does not preclude application in appropriate circumstances of other law to aspects of the transaction which do not relate to the sale of goods.

Ky. Rev. Stat. Ann. § 355.2-102.

*Dist.*, No. 2020-CA-0806-MR, 2022 WL 815077, at *3 (Ky. Ct. App. Mar. 18, 2022) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 107 (Ky. 2003)).

On the other hand, "if a reasonable person would find [the contract] susceptible to different or inconsistent interpretations," then the contract is ambiguous. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Company*, 94 S.W.3d 381, 385(Ky. App. 2002); *see also Martin v. Martin*, No. 2017-CA-001944-MR, 2019 WL 1578675, at *2 (Ky. Ct. App. Apr. 12, 2019). Once a court determines that a contract is ambiguous, areas of dispute concerning extrinsic evidence are factual issues, and construction of the contract becomes subject to resolution by the factfinder. *Cantrell*, 94 S.W.3d at 385 (citing *Cook United, Inc. v. Waits, Ky.*, 512 S.W.2d 493, 495 (1974); *Reynolds Metals Co., supra; Lagrew v. Hooks–SupeRx,* 905 F. Supp. 401, 404 (E.D. Ky. 1995)).

Indeed, "[w]hen a contract's terms are ambiguous . . . interpretation is a question of fact and is not appropriately decided in the context of Rule 12." *Thorne v. Satellogic USA, Inc.*, No. 3:23-CV-00619, 2024 WL 1558707, at *11 (M.D. Tenn. Apr. 9, 2024) (Richardson, J.) (quoting *McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *3 (E.D. Tenn. Mar. 22, 2007)); *see also Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) ("In reviewing a Rule 12(b)(6) motion to dismiss, the Court may resolve issues of contract interpretation . . . but must resolve all ambiguities in the contract in [the] [p]laintiffs' favor [and] should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6) [because] the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." (cleaned up)). The Court here finds probative the remarks of Judge Readler in explaining the Sixth Circuit's reversal a district court's grant of an insurer's motion to dismiss based on the district court's construction of an insurance-policy term (in favor of the insurer):

> {W]e cannot say at this threshold stage, as did the district court, that [Defendant's] view is the only potentially reasonable interpretation of the policy language. . . . Both [Defendant] and [Plaintiff's] views have ample support. All things considered, including the somewhat detailed discussion necessary to explain these competing views, we find that, at this stage, both views are reasonable. …[Plaintiff's] claim therefore survives [Defendant's] Rule 12(b)(6) motion.

*Perry v. Allstate Indem. Co.*, 953 F.3d 417, 432 (6th Cir. 2020) (Readler, J. concurring in part and dissenting in part).

In order for Defendant to succeed on the Motion, it must show the Court that (1) the contract is unambiguous in all relevant respects, such that the Court may interpret it as a matter of law on a Rule 12(b)(6) motion to dismiss, *and* that (2) Plaintiff has failed to plausibly allege a breach of contract (as the (unambiguous) contract is interpreted by the Court).

2. <u>Analysis</u>

Defendant raises several purported grounds for dismissal. In substance, the grounds are as follows: (1) Section 5 under "Transition Activities," which undergirds Plaintiff's entire claim, is non-binding (and thus enforceable) because (according to Defendant) the "Section[ ] . . . 5" identified as binding in the Term Sheet's introductory paragraph is actually Section 5 under "Other Terms and Conditions," (Doc. No. 15 at 9-10); (2) the Term Sheet is unenforceable (in its entirety) because Section 5 of the "Transaction Activities" provision contemplates future negotiations (*id*. at 10); and (3) the Term Sheet is unenforceable (in its entirety) alternatively because it is (according to Defendant) a mere "preliminary agreement" and not an enforceable contract (*id*. at 10-13). Notably, the last two grounds assert that the Term Sheet is unenforceable *in its entirety*, while the first of which asserts that Section 5 under "Transition Activities" *in particular* is unenforceable because it is not the Section 5 identified as binding in the introductory paragraph of the Term Sheet. The Court will address all three arguments in turn, albeit with the caveat that the question

here *at the current motion-to-dismiss stage* is whether Plaintiff has alleged facts that *plausibly suggest* that what Defendant deems unenforceable actually is enforceable.

In assessing Defendant's first argument, the Court assumes for the moment that the Term Sheet is not unenforceable in its entirety, so that the Court must decide whether Section 5 under "Transition Activities" *in particular* must be deemed unenforceable even at the instant motion-to-dismiss stage. Before the Court can evaluate the extent to which Section 5 under "Transition Activities" is binding, the Court must first assess the meaning of the phrase "Terms and Conditions" as used in the introductory paragraph where that phrase appears. Defendant argues that "Terms and Conditions" refers to a specific part of the Term Sheet entitled "Other Terms and Conditions," and therefore, based on the last sentence in the introductory paragraph—"This Term Sheet is non-binding except in respect of Sections 3, 4 and 5 of the Terms and Conditions set forth below"—Section 5 under "Other Terms and Conditions ("Compliance with Laws") would be binding and Section 5 under the "Transition Activities" ("Inventory Purchase") would be non-binding. (Doc. No. 15 at 3-4). If true, this would defeat Plaintiff's claim. So Plaintiff naturally has a different interpretation whereby the binding provision is Section 5 under "Transition Activities." Plaintiff argues that "Terms and Conditions" generally encapsulates the arrangements, rules, requirements, and standards of the Term Sheet (which would include the things discussed under "Transition Activities"), and that the use of the word "[o]ther" in "Other Terms and Conditions" indicates "a section providing more, distinct terms and conditions in addition to the terms and conditions already provided in the [Term Sheet]". (Doc. No. 18 at 8).

Supporting Plaintiff's interpretation of "Terms and Conditions" is the fact that (i) other defined terms throughout the Term Sheet are boldened and placed in parentheses and quotation marks, and yet this was not done for "Terms and Conditions," which tends to refute the notion that

it refers to some specific portion of or concept within the Term Sheet (namely, "Other Terms and Conditions"); and (ii) "Terms and Conditions" is, obviously not identical to "Other Terms and Conditions," the term that so easily could (and should) have been used if "Terms and Conditions" was intended to refer to "Other Terms and Conditions." But supporting Defendant's interpretation is the fact that in the introductory paragraph "Terms and Conditions" is capitalized as if it *were* intended to refer to some specific portion of or concept within the Term Sheet.

The Court finds that both parties have presented reasonable interpretations of "Terms and Conditions" as that phrase is used in the introductory paragraph (which is the vital phrase here). Accordingly, the Court finds the phrase "Terms and Conditions" within the introductory paragraph of the Term Sheet to be ambiguous. This conclusion is bolstered by the fact that there appears to be no stock (or widely and universally accepted single) legal definition, of "terms and conditions." Finding this to be an ambiguous phrase within the Term Sheet, the Court declines to construe this term at this early stage, and therefore, declines to determine which Section 5 of the Term Sheet is binding and not binding. Accordingly, the Court cannot grant the Motion based on the first argument.

Defendant's second argument attacks the enforceability of the Term Sheet, based on its assertion that Section 5 of the "Transaction Activities" provision contemplates future negotiations, and that the UCC does not support enforcement of alleged contracts that involve an agreement contingent upon a future agreement by the parties. (Doc. No. 15 at 10, 14). The Court finds this argument to be unavailing. Kentucky's version of the UCC contemplates that a contract is not unenforceable even where parties have left some terms "open" (i.e., left for future negotiations) if the parties intended to make a contract and there is a reasonably certain basis for giving appropriate relief (on a contract claim). *See* Ky. Rev. Stat. Ann. § 355.2-204(3) ("Even though one (1) or more

terms are left open[,] a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."). *See also A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 509 (Ky. Ct. App. 1999) ("even when certain terms are left open (such as those relating to price, time, and delivery), a contract for the sale of goods does not fail for indefiniteness or lack of mutuality if the parties have intended to make a contract and there is a reasonably certain basis for granting appropriate relief." (citing KRS 355.2–204(3)). Based on the allegations of the Complaint, it is plausible that the parties intended to make a contract and that there is a reasonably certain basis for giving appropriate relief on Plaintiff's breach-of-contract claim. So Accordingly, the Court cannot grant the Motion based on Defendant's second argument.

Via its third argument, Defendant asserts an alternative reason why the Term Sheet is unenforceable in its entirety, namely that it is a mere "preliminary agreement" and not an enforceable contract. Specifically, Defendant argues the Term Sheet is unenforceable because it "leaves essentially every material term to future activities and negotiations, is unenforceable as a contract as a matter of law," and moreover, Section 5 of the "Transaction Activities" "is far too indefinite as to be subject to enforcement." (Doc. No. 15 at 13). Attempting to support this argument, Defendant relies on *Cinelli v. Ward*, to argue that "Kentucky follows the traditional 'all or nothing' approach to *preliminary agreements*" (Doc. No. 15 at 12) (emphasis added); *Cinelli v. Ward*, 997 S.W.2d 474, 478 (Ky. Ct. App. 1998). This is simply not what the court in *Cinelli* discussed; indeed, "preliminary agreement" appears nowhere in the *Cinelli* opinion. *Cf Cinelli*, 997 S.W.2d 474.

Rather, *Cinelli* applies the "all or nothing" approach in reviewing *contracts*: "either the agreement is enforceable as a binding contract to consummate the transaction or it is unenforceable

as something less."[9] *Id.* at 478. Moreover, *Cinelli*, wherein the agreement contemplated a future date for lending money, the parties repeatedly modified the settled terms, and the agreement itself contemplated the possibility that the deal may never close, sharply differs from the instant matter, where Plaintiff and Defendant signed a single writing (the Term Sheet), without indications of modifying or changing the terms, and the Term Sheet includes a specific end date for Defendant to tender the purchase price for the Inventory, as well as certain employee and customer relationships.[10] (*See generally*, Doc. No. 1-2).

      Defendant also argues that the Term Sheet is unenforceable because the UCC requires a contract to contain a quantity term in writing in order to be enforceable. (Doc. No. 15 at 14) (citing *H & C AG Servs., LLC v. Ohio Fresh Eggs, LLC*, 41 N.E.3d 915, 924 (Ohio App. Ct. 2015) (wherein an Ohio appellate court reviewed the terms of a "requirements contract," finding that the agreement was left without an enforceable term because the agreement provided, in part: "Specific quantity to be determined by and mutually agreeable [sic] both parties."—i.e., each party reserved an unlimited right to *agree* to the specific quantity of manure, and so it followed that, if one of the parties refused to agree to the specific quantity of manure, that party has no obligation to sell manure or purchase manure.); *cf. Sabatine BK Dev., LLC v. Fitzpatrick Enters.*, 85 N.E.3d 1127 (Ohio App. Ct. 2017) (wherein an Ohio appellate court considered whether "specific performance of a contract" could be an equitable remedy, citing to the open term analysis in *H & C AG Servs., LLC)*; *First Tech. Cap., Inc. v. JPMorgan Chase Bank*, N.A., 53 F.Supp.3d 972, 984 (E.D. Ky. 2014) (finding no valid and binding agreement were the bid was "subject to" two particular

---

[9] *Cinelli* actually, in the Court's view, seems to suggest that Kentucky's "all or nothing" approach would not accept, even entertain, an in-between, like a "preliminary agreement."

[10] Notably, construing the Complaint in Plaintiff's favor, the Complaint has no content suggesting that Defendant objected to the enforceability of the Term Sheet or performance by the parties thereunder.

conditions: due diligence review and the parties' execution of a formal "Transfer of Claim" agreement).

"For any contract to be enforceable, its material terms (for example, the subject matter, price, payment terms, quantity, quality, duration, or the work to be done) must be fixed with substantial certainty." *Watson by & through Watson v. Jagoe Homes, Inc.*, No. 2016-CA-001897-MR, 2017 WL 6398289, at *6 (Ky. Ct. App. Dec. 15, 2017) (citing *Walker v. Keith*, 382 S.W.2d 198, 204–05 (Ky. Ct. App. 1964). "Fixed with substantial certainty" does not mean an exact number; as mentioned above, Kentucky law allows for certain terms to be left open, such as those relating to price, time, and delivery. *See* Ky. Rev. Stat. Ann. § 355.2-204(3).

Defendant fails to make any argument as to how the Term Sheet lacks a quantity term "fixed with substantial certainty,"[11] but does point out Plaintiff's omission of a notable sentence within Section 5, appearing below the heading "Transition Activities" of the Term Sheet: "The parties shall jointly conduct a review of the Inventory to verify the physical condition, value and quantity of the Inventory." Defendant argues that this joint review did not occur "due to Plaintiff's refusal to cooperate, which is not surprising, as [Defendant] understands that the majority of the 'inventory' that Plaintiff intended to sell was in extremely poor condition and not usable . . . ." (Doc. No. 15 at n.10). Defendant's point in this regard is well-taken with the Court; however, on the instant Motion, the Court is limited to the allegations pled in the Complaint (and whatever other limited information the Court may properly consider on a Rule 12(b)(6) motion), and deciding whether those allegations (and cognizable other information) plausibly suggest an entitlement to relief. The Court does not discern anything in the record based on which the Court

---

[11] The stronger argument here may have been to argue that due diligence of the parties remained a condition precedent to purchasing Inventory, and it is exactly that condition that Plaintiff failed to include in its Complaint when block quoting Section 5 of "Transition Activities." But Defendant did not raise such an argument, and the Court will not do so for Defendant here.

could accept Defendant's invitation to find that the joint review did not occur and that the inventory was unusable, and so the Court cannot rely on Defendant's assertion. Here, the Court finds that as pled Plaintiff has plausibly alleged factual allegations that suggest an entitlement to relief based on an alleged breach of an allegedly binding contractual provision, i.e., Section 5 of the "Transition Activities" portion of the Term Sheet. Consequently, the Court cannot find at this stage that the Term Sheet is unenforceable based on Defendant's third argument.

Moreover, the Court is not persuaded that the Term Sheet is unenforceable on the grounds that Section 5 of "Transition Activities" prescribes no quantity of goods, because the Court believes that it in fact does prescribe something cognizable as a quantity of goods. That section calls for Plaintiff to sell to Defendant "all remaining inventory" at Plaintiff's Frankfort warehouse. (Doc. No. 1-2 at 2). The Court finds persuasive the analysis of the court in *In re BTS, Inc.*, 104 B.R. 1009 (Bankr. W.D. Mo. 1989), which assessed whether two particular letters (dated November 2 and October 27) contained a quantity term within the meaning of Kansas's version of the applicable UCC provision (Section 84–2–201):

> These writings also contain a quantity term. The November 2 and October 27 letters contemplate the sale of inventory that existed as of a certain date. The quantity requirement of Section 84–2–201 does not require a numerical quantity, but rather an identifiable quantity. *White & Summers*, [*The Uniform Commercial Code*] § 2–4, p. 81, n. 10 [3rd Ed. 1988]. In the matter at hand, the writings show that KCI had agreed to sell all inventory purchased from Debtor to Somervold. This language is sufficient to satisfy the quantity requirement of Section 84–2–201.

*Id*. at 1011-1012. *Accord*, *Ho v. Wolfe*, 688 S.W.2d 693, 695–96 (Tex. App. 1985).

In sum, finding "Terms and Conditions" to be an ambiguous phrase within the Term Sheet, the Court declines to resolving the ambiguity in the Term Sheet at this early stage, and so it cannot now resolve whether Plaintiff is relying on a particular part of the Term Sheet that is unenforceable. Moreover, Court declines to find at this early stage that the Term Sheet as a whole is unenforceable.

The Court declines to speculate as to whether these sorts of arguments, re-fitted as appropriate for later stages in this litigation, would gain traction at that time.

## **CONCLUSION**

For the reasons discussed herein, the Motion (Doc. No. 14) will be **DENIED**. An appropriate corresponding order will be entered separately.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE